E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
CHRISTOPHER C. KENDALL (Cal. Bar. No. 274365)
Assistant United States Attorneys
Deputy Chief, International Narcotics,
  Money Laundering, and Racketeering Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2576
     Facsimile: (213) 894-0142
     E-mail:    christopher.kendall@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 14-684-CAS-7 |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT JESUS DORAN |
| v. | Hearing Date: April 10, 2023 |
| JESUS DORAN, | Hearing Time: 2:30 p.m. |
| Defendant. | Location: Courtroom of the Hon. Christina A. Snyder |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Christopher C. Kendall, hereby files its Sentencing Position as to defendant JESUS DORAN.

//
//
//
//
//

This sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 8, 2023                    Respectfully submitted,

                                        E. MARTIN ESTRADA
                                        United States Attorney

                                        MACK E. JENKINS
                                        Assistant United States Attorney
                                        Chief, Criminal Division


                                              /s/
                                        CHRISTOPHER C. KENDALL
                                        Assistant United States Attorney

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On January 25, 2023, defendant JESUS DORAN ("defendant") pleaded guilty to Racketeering Influenced and Corrupt Organizations conspiracy, in violation of 18 U.S.C. § 1962(d) (Count One), and drug conspiracy, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B) (Count Four).  On March 8, 2023, the United States Probation Office ("USPO") filed its Presentence Investigation Report ("PSR") (Dkt. No. 2274) and recommendation ("Recommendation Letter") (Dkt. No. 2273) in this matter.  The USPO determined that the total applicable offense level is 23, and that defendant's criminal history falls within category VI, resulting in a range under the sentencing guidelines of 92 to 115 months.  (PSR ¶ 81.)  Both parties have agreed that the Court should impose a 96-month term of imprisonment.  (Id. ¶ 7.)

The government concurs with the USPO's calculation of defendant's criminal history category and agrees with the USPO's ultimate recommendation.  Accordingly, the government believes that a sentence of 96 months in custody, followed by a four-year term of supervised release, is sufficient but not greater than necessary, to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a).

**II.   FACTUAL BACKGROUND**

Between no later than September 2011, and continuing at least until December 10, 2014, defendant was a member of the Big Hazard street gang[1] and was associated in fact with the Hazard

---

[1] The Big Hazard Street gang is a multi-generational gang that originated in the early 1940s and claimed a sizeable portion of East Los Angeles as Hazard Territory.  (PSR ¶ 14.)

Organization.[2] (PSR ¶ 18.) In that capacity, defendant agreed with other Hazard Organization members and associates that a co-conspirator would conduct the affairs of the Hazard Organization through at least two racketeering acts, including acts involving possession with the intent to distribute, and distribution of, controlled substances, which would have a relationship to each other and pose a threat of continued criminal activity. (Id.) Defendant intentionally became a member of this conspiracy knowing of this object, knowing it was illegal, and intending to help accomplish it. (Id.)

Defendant conspired with other associates of the Hazard Organization to sell, or aid others in selling at least five grams of methamphetamine and at least 100 grams of a mixture or substance containing a detectable amount of heroin in the Hazard Territory. (Id. ¶ 19.) The distribution of methamphetamine and heroin was within the scope of the jointly undertaken criminal activity, in furtherance of that criminal activity, and reasonably foreseeable in connection with that criminal

---

[2] The Hazard Organization is comprised of Big Hazard street gang members, Mexican Mafia members, and gang associates. (PSR ¶ 13.) It claimed criminal control over the following territory in East Los Angeles (the "Hazard Territory"): Valley Boulevard to the North, Indiana Street to the East, Marengo Street to the South, and Cornwell and San Pablo Streets to the West. Members and associates of the Hazard Organization control Hazard Territory by, amongst other things, collecting "tax" payments from co-conspirator gang members and associates derived from the sale of firearms and controlled substances; committing robberies against local residents and unaffiliated drug dealers; conducting surveillance against rival gang members and members of law enforcement; prohibiting the sale of drugs by individuals who are not members or associates of, or did not have approval from Big Hazard; excluding the presence of other area street gangs from their territory through violence and the threat of violence; and placing graffiti throughout the Hazard Territory which bore Big Hazard nicknames and symbols. (Id. ¶ 16.)

2

activity. (Id.) In addition, defendant conspired with other members and associates of the Hazard Organization to distribute controlled substances, including heroin, into prisons and detention facilities. (Id.)

In furtherance of this conspiracy, defendant committed at least the following acts:

- On November 18, 2011, using coded language in a telephone conversation, defendant, on behalf of two co-conspirators ("Co-Conspirator X" and "Co-Conspirator Y"), arranged a meeting with a confidential informant to discuss future drug transactions and "tax" payments. (Id. ¶ 19.)
- On November 18, 2011, defendant and Co-Conspirator Y met with a CI, collected a $300 "tax" payment on behalf of the Hazard Organization, discussed various neighborhoods and whether they were cooperating with (meaning, paying "taxes" to) Co-Conspirator X and the Hazard Organization, and directed the CI to collect "taxes" from the CI's neighborhood. (Id.)
- On February 28, 2013, using coded language in telephone conversations, defendant and Co-Conspirator Y discussed Hazard Organization activity, including that a rival gang had a "green light;" that Co-Conspirator Y suspected that others were providing information to law enforcement; and that Co-Conspirator Y had heroin available for smuggling into prison. (Id.)

**III. THE PRESENTENCE REPORT**

Based on the amount of methamphetamine and heroin that defendant conspired to distribute, pursuant to U.S.S.G. § 2E1.1(a)(1) and

3

U.S.S.G. §§ 2D1.1(a)(5), (c)(8), the USPO determined the base offense level to be 24. (Id. ¶¶ 2-5.)[3] The USPO further determined that, pursuant to U.S.S.G. § 2D1.1(b)(4), a two-level upward increase for conspiring to distribute heroin in a prison facility. (Id. ¶ 6.)

The USPO also found that defendant has accepted responsibility. (Id. ¶¶ 13-14.) As such, the offense level should be reduced by three levels. (Id.) Accordingly, the USPO concluded that the total offense level is 23. (Id. ¶ 15.)

The USPO also determined that defendant's criminal history scored 22 points. (Id. ¶ 33.) A criminal history score of 22 points establishes a criminal history category of VI. (Id.) The resulting sentencing guideline range is 92 to 115 months. (Id. ¶ 81.)

**IV. USPO's RECOMMENDATION**

The USPO recommends that defendant be sentenced to: (a) a sentence of 96-months imprisonment; (b) a four-year term of supervised release; and (c) a $200 special assessment. (Recommendation Letter at 1.)

**V. THE GOVERNMENT'S POSITION – A SENTENCE OF 96 MONTHS IS REASONABLE AND APPROPRIATE PURSUANT TO THE 3553(A) FACTORS**

The government requests the Court adopt the factual findings and criminal history calculation of the PSR in this matter, as well as the USPO's ultimate sentencing recommendation. Accordingly, based on the nature and circumstances of the offense, defendant's history and characteristics, the need to promote deterrence and respect for the law, and the need to avoid unwanted sentencing disparities, the government respectfully recommends: (a) a sentence of 96 months'

---

[3] The government notes that the paragraph numbers in the PSR restart at page 11 and should be fixed in a revised PSR.

4

imprisonment; (b) a four-year period of supervised release; and (c) a $200 special assessment.

### A. Nature and Circumstances of the Offense, § 3553(a)(1)

Defendant committed a very serious offense by conspiring to distribute more than five grams of actual methamphetamine and more than 100 grams of a mixture or substance containing a detectable amount of heroin. Moreover, defendant conspired to distribute heroin in a prison facility, collected "tax" payments for the Hazard Organization, and engaged in other racketeering activities in furtherance of the Hazard Organization. Accordingly, in light of the nature and circumstances of the offense, the government believes that a sentence of 96 months' imprisonment is appropriate.

### B. History and Characteristics of Defendant, § 3553(a)(1)

Defendant is 40 years-old with prior convictions for possession of a controlled substance (twice), petty theft, robbery, possession of drugs in prison, contempt (twice), trespass, maintaining a public nuisance, and vehicle theft. (PSR ¶¶ 22-30, 49.) As to mitigating factors, defendant was jumped into a gang when he was 10 years-old, has been shot on multiple occasions, and has some history of substance abuse. (Id. ¶¶ 55, 68-71.) Accordingly, the government recommends a sentence of 96 months' imprisonment.

### C. Need for Deterrence and to Promote Respect for the Law, § 3553(a)(2)

The government respectfully submits that a 96-month sentence will appropriately reflect the seriousness of the offense and promote respect for the law, deter future criminal conduct from both the defendant and others without being greater punishment than necessary, and serve to protect the community. By requiring defendant to spend

imprisonment; (b) a four-year period of supervised release; and (c) a $200 special assessment.

### A. Nature and Circumstances of the Offense, § 3553(a)(1)

Defendant committed a very serious offense by conspiring to distribute more than five grams of actual methamphetamine and more than 100 grams of a mixture or substance containing a detectable amount of heroin. Moreover, defendant conspired to distribute heroin in a prison facility, collected "tax" payments for the Hazard Organization, and engaged in other racketeering activities in furtherance of the Hazard Organization. Accordingly, in light of the nature and circumstances of the offense, the government believes that a sentence of 96 months' imprisonment is appropriate.

### B. History and Characteristics of Defendant, § 3553(a)(1)

Defendant is 40 years-old with prior convictions for possession of a controlled substance (twice), petty theft, robbery, possession of drugs in prison, contempt (twice), trespass, maintaining a public nuisance, and vehicle theft. (PSR ¶¶ 22-30, 49.) As to mitigating factors, defendant was jumped into a gang when he was 10 years-old, has been shot on multiple occasions, and has some history of substance abuse. (Id. ¶¶ 55, 68-71.) Accordingly, the government recommends a sentence of 96 months' imprisonment.

### C. Need for Deterrence and to Promote Respect for the Law, § 3553(a)(2)

The government respectfully submits that a 96-month sentence will appropriately reflect the seriousness of the offense and promote respect for the law, deter future criminal conduct from both the defendant and others without being greater punishment than necessary, and serve to protect the community. By requiring defendant to spend

84 months in custody, the Court will impress upon defendant and others the seriousness of his crime, give defendant time to reconsider his actions in light of the consequences, and hopefully deter defendant and others from engaging in additional offenses in the future. In light of these considerations, the government submits that a sentence of 96 months' imprisonment is appropriate for this defendant.

### D. Policy Statements and Need to Avoid Unwarranted Sentencing Disparities, § 3553(a)(6)

Section 3553(a)(6) requires the Court to minimize sentencing disparities among similarly-situated defendants. One way of doing so is to correctly calculate the Guidelines range. See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . ."); see also Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Sentencing Guidelines ranges. Since the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities.").

Here, other defendants in the same circumstances as defendant, namely, defendants with an offense level of 23 and a criminal history category of VI, could expect to serve between 92 and 115 months in custody. Accordingly, considering the guidelines range, the government believes that its recommended sentence of 96 months' imprisonment, followed by a four-year period of supervised release

will avoid unwarranted sentencing disparities with other similarly-situated defendants.

## VI. FINE

The USPO determined that defendant does not have the ability to pay a fine at the time of sentencing. (PSR ¶ 77.) Accordingly, the UPSO recommends that, pursuant to U.S.S.G. § 5E1.2(a), all fines should be waived. (Recommendation Letter at 1.) The government agrees with the USPO and believes that defendant is unable to pay any fine at this time or at any point in the foreseeable future.

## VII. CONCLUSION

For the foregoing reasons, a sentence of 96 months is sufficient, but not greater than necessary, to punish defendant, promote respect for the law, deter defendant from committing similar crimes in the future, and avoid sentencing disparities. See generally 18 U.S.C. § 3553(a). Accordingly, the government recommends that the Court sentence defendant to 96 months in custody, followed by a four-year period of supervised release, and a mandatory special assessment of $200.